## Isaac Perry & others *vs.* Joseph C. Kline.

In 1802, J. P. devised his real estate to three of his sons, Benjamin, Lambert,
and Stephen, "to be equally divided between them, to them and the heirs of
their bodies lawfully begotten, except that if either died without legal issue,
his estate to be equally divided between the survivors or their legal heirs : "

*It seems,* that this gave the three sons an estate tail, as tenants in common, with
cross-remainders in tail; the phrase "legal heirs" being apparently used to
mean heirs of their bodies.

In 1805, Lambert conveyed his third to Benjamin and Stephen in fee, with cov-
enants of warranty, by deed executed in presence of two witnesses, for a val-
uable consideration, and duly acknowledged. *Held,* that under *St.* 1791, *c.* 60,
§ 1, this deed barred the entail, and vested Lambert's third equally in the
grantees in fee, and that Benjamin and Stephen then held each one half of the
estate ; viz., two sixths in tail, under the will, and one sixth in fee, under
said deed.

In 1821, Benjamin and Stephen conveyed ten and one half acres of the estate to
one E. B., by deed with only one subscribing witness; and, by sundry mesne
conveyances, this title came to K. *Held,* that the heirs of Stephen, who died
in 1848, could recover of K. the one third of this ten and one half acres which
Stephen took under the will of his father, as tenant in tail; as his deed of
1821 to E. B. was not sufficient to bar the entail under the *St.* of 1791, and
could not operate by way of estoppel on the heirs.

In 1822, Benjamin died without issue, not having barred his entail in his original
one third. *Held,* that, under the will of J. P., Benjamin's interest went to
Stephen and Lambert in equal shares in tail.

In 1826, Stephen, by warranty deed in all respects conformable to *St.* of 1791,
conveyed to K. all his interest in the estate, the deed purporting to convey the
entire farm, and thus barred the entail vested in him ; and, in 1843, Lambert
died without issue, holding one sixth as tenant in tail in remainder, acquired
upon the death of Benjamin in 1822, not having barred his entail. *Held,* that
this one sixth then reverted to the heirs of J. P., of whom Stephen was one,
and that his interest, so acquired, enured to K. by way of estoppel under the
deed of 1826, and that the heirs of Stephen could not recover any portion
thereof of K.

Perry & others *v.* Kline.

*Held,* also, that if Lambert took one sixth as heir of Benjamin in 1822, and made no entry and brought no action for twenty years, he and all claiming under him were barred by the statute of limitations.

*Held,* further, that if Lambert had entered before 1826, the deed of Stephen of that date, conveying the whole estate, operated as a disseisin ; and if he made no entry, and brought no action within twenty years from such disseisin, his right, and the right of those claiming under him, was also barred.

WRIT OF ENTRY.  Plea, *nul disseisin.*  The parties submitted the following case :

John Perry was seised in fee-simple of the premises in his lifetime, and made his last will and testament, one clause of which was as follows : " I also give and bequeathe unto my three sons, Benjamin, Lambert, and Stephen, all the real and personal estate (except household goods above mentioned) that I shall die seised or in any way possessed of, to be equally divided between them, to them and the heirs of their bodies lawfully begotten, except as hereafter excepted, viz : that, in case either of my said before-mentioned sons, Benjamin, Lambert, or Stephen, should die without any legal issue, it is my will that said deceased son's estate, that he shall receive by virtue of this will, shall be equally divided between the two surviving sons or their legal heirs."   A subsequent clause in the will is as follows : " As to the rest and residue of my real and personal estate that I shall die possessed of, I give unto my said three sons, Benjamin, Lambert, and Stephen."

Said John Perry died in 1802, and his will was approved, and probate granted thereon, January 3, 1803.   Lambert, in 1805, conveyed his interest in the premises to Benjamin and Stephen, and died 20th January, 1843.

After the deed from Lambert, said Stephen and Benjamin, March 22, 1821, conveyed a part of the premises, to wit : ten acres and a half, to Ephraim Baldwin, by a deed witnessed by only one subscribing witness, and by mesne conveyances the same came to the tenant in this action ; and in 1822, Benjamin deceased, without having made any other convey ance ; and on 23d February, 1826, said Stephen, by deed, executed in presence of two subscribing witnesses, conveyed the residue of the demanded premises to the tenant.

The ages of the demandants are as follows: Said John was born June 24, 1803; Clarissa, November 22, 1805; Vienna, September 18, 1808; Isaac, July 21, 1813; Daniel, April 25, 1818. Clarissa was married March 21, 1826, and Vienna, March 26, 1834. The said Stephen died insolvent October 18, 1848, his heirs receiving no property from him, and the demandants are children and heirs of said Stephen. [The other facts necessary to understanding the case appear in the opinion of the court.]

The case presenting a question of construction of the will, was, by consent, taken from the jury, and it was agreed that such judgment should be rendered in the case as the whole court, upon considering the will and the facts aforesaid, should direct.

*I. Sumner,* for the demandants. 1. Under the will of John Perry, do the demandants take an estate as purchasers? We submit that neither of the sons of John could convey any estate except a life-estate absolutely, because, in the event of his dying without heirs of his body, &c., the survivors or their heirs take his share. This is manifest from the first clause in the report. Each takes a life-estate with cross remainders in tail. And the other clause, recited in the report, sustains the ground that a life-estate only was given, with remainder over to the survivors or heirs; for, by comparing the two clauses, it will be seen there is no residuum of real or personal estate whereon the last clause would operate.

2. Or it may be insisted by demandants that the last clause gives them (the sons) only an estate for life, and that the first clause designates the heirs of the sons as descriptive of the persons who are to take after the estate of the sons is terminated, or, in other words, after the decease of the sons. If the latter clause is repugnant to the former one, then a life-estate only passed to the sons, and the remainder goes to the grandchildren by inheriting from John. *Long* v. *Laming,* 2 Burr. 1100; *Adams* v. *Cruft,* 14 Pick. 22; *Hawley* v. *Northampton,* 8 Mass. 38; 4 Kent Com. (2d ed.) 357.

All the estate, then, which Lambert conveyed, in 1805, to Stephen and Benjamin, was his life-estate; and a like estate

was conveyed by Stephen and Benjamin to Baldwin.   Then in 1822, when Benjamin died, his share, in other words, one third of the estate, went to Lambert and Stephen in fee-tail. Benjamin died without heirs of his body.   In 1826, Stephen conveyed to the tenant, (living Lambert, who died in 1843.) He could only pass the fee in one sixth of the premises, the share that came to him from Benjamin, and an estate for his own life in the residue.   Lambert died in 1843, living the said Stephen, without heirs of his body.   Stephen then took the share of Lambert, viz : one sixth of the premises in fee-tail.   On the death of Stephen, (if the grandchildren of John, the testator, take by purchase, or in remainder after the heirs of the sons of John,) then the demandants are entitled to one sixth of the premises.

3. But if Stephen had a right to convey in fee the two shares of Lambert and Benjamin, the share he held in his own right under the will, if he held it in fee-tail, did not pass ¹n fee-simple to Baldwin, because the deed was not exe-cuted according to the statute.   Of the ten acres and a half therefore, the demandants are entitled to recover one half part.

*J. Rockwell & E. Merwin,* for the tenant.   1. The three broth-ers, Stephen, Benjamin, and Lambert, took the estate equally, in common, as tenants in tail, under their father's will.   1 Cruise Dig. tit. II. *c.* 1, § 13 ; *Brimmer* v. *Sohier,* 1 Cush. 118, 130 ; *Cuffee* v. *Milk,* 10 Met. 366 ; *Wheatland* v. *Dodge,* 10 Met. 502 ; *Buxton* v. *Inhabitants of Uxbridge,* 10 Met. 87.

2. Stephen outlived his brothers ; his children, therefore, must claim through him, and are estopped by his deeds, ex-cept as remainder-men in tail.   At the death of Lambert, in 1843, (if no conveyances had been made by Stephen,) he would have had title to the whole estate, — to a part in fee-tail, to the other part in fee-simple.   As to estoppel, see Co. Litt. 352 *a* ; 4 Com. Dig. 79 ; 4 Kent Com. 261 *& notes ; Somes* v. *Skinner,* 3 Pick. 51 ; *White* v. *Patten,* 24 Pick. 324 ; 1 Salk. 274, 276.

3. His deed of February 23, 1826, of all but ten and a half acres, being in compliance with *St.* 1791, *c.* 60, bars all re

mainders in tail, and by it his children are estopped to claim any part as heirs in fee-simple. Godbolt, 147; Lord Say's case, 10 Mod. 45; *Williams* v. *Hichborn,* 4 Mass. 189; *Soule* v. *Soule,* 5 Mass. 61; *Nightingale* v. *Burrell,* 15 Pick. 104; *Terry* v. *Briggs,* 12 Met. 17.

4. Stephen's children are precluded from claiming the ten and a half acres, by deed and by estoppel, as to all but the one third thereof which Stephen held as tenant in tail; and as to this one third, they are barred by Rev. Sts. *c.* 119, § 9.

SHAW, C. J. 1. This is a writ of entry brought to recover real estate in Egremont, by the demandants, as the children and heirs of Stephen Perry, deceased, who was one of the children and devisees of John Perry, who died seised of the premises prior to 1803, and whose will was admitted to probate January 3, 1803. The tenant defends on the ground that, by various mesne conveyances from the devisees of John Perry, he has acquired a valid title to the estate, and that the demandants had nothing in the premises at the time of the commencement of this action.

The facts upon which the case depends are perhaps not fully stated in the report; but by the will and deeds referred to, and concessions made at the argument, we believe they are now fully understood. The question depends on a devise in John Perry's will to his three sons, Benjamin, Lambert, and Stephen, whom he makes executors. It appears by his will that he had three other sons living, two daughters, and grandchildren, the children of a deceased daughter, his heirs at law. The clause in the will is as follows : " Item. I also give and bequeathe unto my three sons, Benjamin, Lambert, and Stephen, all the real and personal estate (except household goods above mentioned) that I shall die seised or in any way possessed of, to be equally divided between them, to them and the heirs of their bodies lawfully begotten, except as hereafter excepted, viz : that, in case either of my before-mentioned sons, Benjamin, Lambert, or Stephen, should die without any legal issue, it is my will that said deceased son's estate be equally divided between the two surviving sons or their legal heirs "

We consider that this devise gave to the three sons estates tail, as tenants in common, with cross-remainders in tail. " Should either die without legal issue," we think refers to an indefinite failure of issue, and renders the gift over to the survivors a remainder, and not an executory devise. The last words in the clause, " or their legal heirs," might seem to make the devise over a remainder in fee, and not a remainder in tail. But taken in connection with the principal clause, which is clearly an estate tail, we incline to the opinion that the term " legal heirs," following immediately as it does "heirs of their bodies," this clause was intended to have the same meaning. But if the present case turned upon it, as we think it does not, it might require more consideration.

2. In August, 1805, Lambert made a deed, executed in presence of two witnesses, and duly acknowledged, by which, for a valuable consideration, he conveyed his one third to his two brothers, Benjamin and Stephen, in fee, with covenants of warranty. This deed, in conformity with the law then in force, ( *St.* 1791, *c.* 60, § 1,) was sufficient to bar the entail and vest an estate in fee in the grantees. After this conveyance, Benjamin and Stephen each held one half the estate, viz : two sixth parts in tail, under the will, and one sixth in fee, under the deed of Lambert.

3. In 1822, Benjamin died without issue, never having done anything to bar his tenancy in tail of one third. Then, by force of John Perry's will, providing that, in case of the death of either of the tenants without issue, the same should go to the survivors in tail, the third which was originally devised to Benjamin went to Stephen and Lambert, as such survivors, in equal shares, viz : one sixth each. Stephen then owned two thirds of the estate, viz : one third, or two sixths, in his own right under the will in tail ; one sixth under Benjamin, as tenant in tail in remainder ; one sixth in fee under the deed of Lambert. Lambert took one sixth as tenant in tail in remainder. The one sixth which Benjamin held in fee, under deed from Lambert, went to his heirs general, of whom Stephen, as a brother, was one. Supposing him one of nine,

he took one ninth of one sixth, or one fifty fourth, in fee, as heir of Benjamin.

4. Such was the state of the title when Stephen Perry executed his deed to Kline, February 26, 1826. This was a deed for a valuable consideration, executed in presence of two witnesses, and in all respects conformably to the statute, and barred the estate tail then vested in him, that is, to three sixths, being one half of the estate. It also conveyed the one sixth which he held in fee under the deed from Lambert, and all his share, be it more or less, which he held as heir of Benjamin, in the one sixth which Benjamin held in fee under the deed from Lambert. This purported to be a conveyance of the whole farm, with certain exceptions not now in question, and described as being "the same lot of land bequeathed and devised to me by my father, John Perry." By force of this deed, Kline obtained a title, as far as Stephen was concerned, to five sixths; but there was one sixth, as an estate tail, held by Lambert as tenant in tail in remainder. Lambert died without issue, in 1843, not having barred the entail. Leaving no one to take as heir in tail, this part of the devise in tail was determined, and the estate reverted to the heirs of the devisee, John Perry, of whom Stephen, who had survived Lambert, was one. This part of the estate, thus coming to Stephen, enured by way of estoppel, by his warranty to Kline, and made good his title from Stephen. This estoppel bound Stephen and all those claiming under him, and of course the demandants, who can only claim as heirs of Stephen. By this warranty they are estopped and barred.

But there is another view of the case leading to the same result and equally decisive. If Lambert took, as heir of Benjamin, one sixth, either in tail or in fee, his right accrued on the decease of Benjamin in 1822. If he made no entry and brought no action within twenty years from the time his right accrued, he and all those claiming under him were barred by the statute. Rev. Sts. *c.* 119, § 1. By section 3, *cl.* 3, when he claims as heir or devisee, unless there be a tenancy by the curtesy, &c., his right shall be deemed to have accrued at the time of such death. By section 9, when the right of entry or

of action of a tenant in tail is barred by force of this statute, all the estate tail, and all remainders and reversions expectant thereon, shall be barred as fully as they might have been by a conveyance by the tenant in tail, &c.

It appears by the case that the right of Lambert accrued in 1822; that he lived till 1843, more than twenty years; that he brought no action, and it does not appear that he made any entry; and therefore, *primâ facie*, the estate tail and all reversions therein were barred.

But further; in 1826, Stephen conveyed the whole estate to Kline, with warranty, and this was a disseisin of Lambert, if he had entered. By the statute already cited, (§ 3, *cl.* 1,) when any person shall be disseised, his right of entry or of action shall be deemed to have accrued at the time of such disseisin. And by section 10, when any one entitled to recover as tenant in tail, before the expiration of twenty years, no one claiming the estate, which such deceased tenant in tail may have barred, shall make an entry or bring an action, but within the period during which the deceased tenant, if he had so long lived, might have made such entry or brought such action. Suppose, therefore, Lambert was disseised in 1826, and died within twenty years from that time, whoever succeeded to his right, in reversion or otherwise, must have entered or brought his action before the expiration of twenty years from the disseisin in 1826, or before the end of 1846, which was not done.

We referred, in the early part of this opinion, to the terms of John Perry's will, by which he gave an estate to Benjamin, Lambert, and Stephen, as tenants in common in tail, with a proviso, that, if either of the three should die without legal issue, such deceased son's estate should be equally divided between the two surviving sons and their legal heirs. We said that if this should be construed to give a remainder in fee, or an executory devise to the survivors, instead of a remainder in tail, the result would be the same. The only difference would be that upon the death of Benjamin, Lambert would have taken a sixth in fee. If Lambert made no entry and brought no action, within twenty years from the

11 *

death of Benjamin, he was equally barred. And the above statute, § 2, provides, that if an entry be made or an action brought in right of an ancestor, or predecessor, the twenty years shall be computed from the time the right first accrued to the ancestor. To apply this rule, it appears certain that Lambert was tenant in fee of one sixth; he was disseised, by Stephen's deed to Kline, in 1826; his right of action and of entry then accrued; if he died within twenty years, as he did, any person claiming must bring his action within the same term of twenty years, *i. e.* before the expiration of 1846, which was not done, and so, all persons claiming under him were barred. Besides; if Lambert died seised of the one sixth, leaving no lineal heirs, his estate descended to his brothers and sisters, of whom Stephen, who survived him, was one, and the deed of Stephen to Kline, which would estop him, estops the demandants who claim through him, and as his heirs.

As to the ten and a half acres, part of the original estate of John Perry, it stands on a somewhat different footing. It was embraced in the devise to Benjamin, Lambert, and Stephen, as tenants in tail. The difference in the two cases, is, that Benjamin and Stephen conveyed their part of the entailed estate to Ephraim Baldwin, by a deed executed in presence of one witness only, a deed not within the statute then in force, to bar the entail. *St.* of 1791, *c.* 60. Another distinction is, that not being embraced in the deed of Stephen Perry to Kline, the demandants are not affected by the estoppel effected by that deed.

We have already had occasion to state, that by the deed of Lambert Perry to Benjamin and Stephen, a deed competent to bar his, Lambert's, estate tail, they became seised of one third in fee-simple. In this state of the title, 24th February, 1821, Benjamin and Stephen conveyed the ten and a half acres, with warranty, to Ephraim Baldwin, in fee, through whom, by mesne conveyances, it has come to Kline, the tenant. This deed conveyed to Ephraim Baldwin one third of the ten and a half acres in fee.

As to the one sixth, which Stephen took after the death of Benjamin, if he took as tenant in tail in remainder, never hav-

ing entered or brought his action, for more than twenty years, he is barred, and the estate tail, and all remainders and reversions expectant upon it are determined. The same is true of the one sixth which came to Lambert, and so, for the reasons and upon the grounds already stated, no claim can be made by the demandants. The same conclusion would follow, if Stephen and Lambert took estates in fee in that sixth, as a remainder or an executory devise. And if it is an estate in fee, as to Stephen's one sixth, his heirs general would be estopped by his warranty to Ephraim Baldwin and his assigns.

But in regard to the one third originally devised to Stephen Perry in tail, so far as respects the ten and a half acres, we do not perceive why the demandants, as heirs in tail, are not entitled to recover. The estate tail has not been barred by a common recovery suffered by the tenant in tail, nor by any conveyance, made equivalent by statute to a common recovery; a common deed executed by tenant in tail, not in conformity with the statute, is not sufficient for the purpose. Nor can the deed of the tenant in tail operate by way of estoppel upon the heirs. They do not claim the estate as coming from him as its source, but an estate, coming through him as special heir, which he cannot intercept, except in the modes provided by law. The demandants are heirs of the body of Stephen, and as such, they, or some one of them, are heirs in tail. Their right of entry, or of action, did not accrue until the death of their father in 1848, so that they are not barred by any limitation. Whether this is to go to the children equally, as heirs of the body, with or without right of representation to the children of deceased children, or whether to the oldest son, if any, as heir at law, *quære* See *Davis* v. *Hayden*, 9 Mass. 514.